UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
    :
    :
BSC ASSOCIATES, LLC,    :
    :
        Plaintiff,    :   Index No. <u>3:14-CV-645 (MAD/DEP)</u>
    :
      v.    :   **NOTICE OF REMOVAL OF**
    :   **ACTION PURSUANT TO**
LEIDOS, INC.,    :   **28 U.S.C. § 1332 (DIVERSITY OF**
    :   **CITIZENSHIP JURISDICTION)**
        Defendant.    :
    :
    :
---------------------------------------------------------------- x

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK AND TO PLAINTIFF:

      PLEASE TAKE NOTICE that defendant Leidos, Inc. ("Defendant"), by and through

counsel, and subject to all of their defenses, including any and all Rule 12 defenses, hereby

provide notice of the removal to the United States District Court for the Northern District of New

York, of the following lawsuit, filed April 18, 2014, in the Supreme Court of the State of New

York, County of Broome and, according to the affidavit of service filed on May 5, 2014, served

on Defendant on May 1, 2014, pursuant to the terms of NYSBCL 306: *BSC Associates, LLC v.*

*Leidos, Inc.*, Case No. CA2014 0001024.  The following is a short, plain statement of the

grounds for removal.  *See* 28 U.S.C. § 1446(a).

## I. <u>DESCRIPTION OF THE ACTION</u>

    1.    On April 18, 2014, plaintiff BSC Associates, LLC ("Plaintiff") filed in the

Supreme Court of the State of New York, Broome County, a complaint against Defendant, which

is neither incorporated nor has its principal place of business in the State of New York.  Plaintiff

alleges in the Complaint that Plaintiff is a domestic limited liability company organized under

and existing pursuant to the laws of the State of New York. It is Defendant's belief that the members of Plaintiff are all citizens of New York. A copy of the Complaint is attached hereto as Exhibit 1. The Complaint alleges that Plaintiff is owed license fees and other damages from Defendant pursuant to the purported breach of a subcontract executed between Binghamton Simulator Company, Inc. and Defendant arising out of a prime contract between Defendant and the United States Army concerning a helicopter flight simulator. The Complaint additionally alleges unjust enrichment and violation of Defense Federal Acquisition Regulation Supplement ("DFARS"), Subpart 252.227-7014(k)(2), titled "Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation." The Complaint seeks $90,000.00 per unit in software license fees for each unit subsequent to the second, along with unspecified additional damages, costs and disbursements.

## II. BASIS FOR REMOVAL (DIVERSITY JURISDICTION)

2.      Removal of the Plaintiff's claim is appropriate under 28 U.S.C. §§ 1441(a) and (b) because this Court has original jurisdiction, given that pursuant to 28 U.S.C. § 1332, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between (1) citizens of different States; and/or (2) citizens of a State and citizens of subjects of a foreign state, and/or (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties. Specifically, Plaintiff apparently is a citizen of the State of New York. *See* Exhibit 1 hereto.

3.      The Defendant is neither incorporated under the laws of, nor has its principal place of business in, the State of New York. Rather, Defendant is a Delaware company with its primary place of business in Virginia.

4.      Accordingly, on information and belief, Plaintiff and Defendant are citizens of different states for purposes of 28 U.S.C. §§1441(a) and (b).

### III.   THE NOTICE OF REMOVAL IS PROCEDURALLY PROPER

5.       Based on the foregoing, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and is one that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Venue is proper in the United States District Court for the Northern District of New York, pursuant to 28 U.S.C. § 1446 because the state court action is pending within the Supreme Court of the State of New York, Broome County, which is within this District.  In accordance with the requirements of 28 U.S.C. § 1446(a), a copy of the Complaint and all other papers served on Defendant in the state court action as of the filing of this Notice of Removal are attached hereto as Exhibit 1.  This Notice of Removal is filed within the time provided by 28 U.S.C. § 1446(b) because it has been filed within thirty (30) days after Defendant received a copy of the initial pleading in this action.

### CONCLUSION AND REQUESTED RELIEF

For all of the reasons set forth above, without waiving any defenses to the claims asserted by Plaintiff, including personal jurisdiction, Defendant respectfully requests that this Court proceed with this matter as if it had been originally filed herein.

Dated:  New York, New York
         May 30, 2014

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP

By:    /s/ Kevin R. Puvalowski
            Kevin R. Puvalowski
            Rena Andoh

30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:  (212) 634-3092
Facsimile:  (212) 655-1721
kpuvalowski@sheppardmullin.com
randoh@sheppardmullin.com

*Attorneys for Defendant*

-3-

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2014, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. A true and accurate copy of the foregoing was also sent, via U.S. mail, postage prepaid, this same day to the following who is not a participant in the CM/ECF system:

> Albert J. Millus Jr., Esq.
> HINMAN HOWARD & KATTELL, LLP
> 700 Security Mutual Building
> 80 Exchange Street
> P.O. Box 5250
> Binghamton, New York 13902
> Telephone: (607) 723-5341

> _____ /s/Brian Simpson_____

EXHIBIT 1

STATE OF NEW YORK
SUPREME COURT: BROOME COUNTY

Index No.: CA2014 001024

Date Purchased:
April 18, 2014

BSC ASSOCIATES, LLC,

                          Plaintiff,

        vs.

LEIDOS, INC.,

                          Defendant.

**Summons**

Plaintiff designates
Broome County as the place of trial.

The basis of the venue is
plaintiff's residence. Plaintiff resides at 151
Court Street, Binghamton, New York 13901,
County of Broome

To the above named Defendant:

        **You are hereby summoned** to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorneys within twenty (20) days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated:        Binghamton, New York
              April 18, 2014

Defendant's address:

11951 Freedom Dr.
Reston, VA 20190-5640

                Albert J. Millus, Jr., Esq.
                HINMAN, HOWARD & KATTELL, LLP
                Attorneys for Plaintiff
                700 Security Mutual Building
                80 Exchange Street
                P. O. Box 5250
                Binghamton, New York 13902-5250
                Telephone: (607) 723-5341

RECEIVED
APR 18 2014
BROOME COUNTY CLERK

STATE OF NEW YORK
SUPREME COURT: BROOME COUNTY

RECEIVED
APR 18 2014
BROOME COUNTY CLERK

BSC ASSOCIATES, LLC,

              Plaintiff,

   vs.

LEIDOS, INC.,

           Defendant.

**COMPLAINT**

Index No.:

CA2014001024

Plaintiff BSC Associates, LLC, by and through its attorneys, Hinman, Howard & Kattell, LLP, complaining of defendant Leidos, Inc., alleges as follows:

1.     Plaintiff BSC Associates, LLC is a limited liability company organized under and existing pursuant to the laws of the State of New York.

2.     Upon information and belief, defendant Leidos, Inc. is a corporation organized under and existing pursuant to the laws of the State of Delaware.

3.     Upon information and belief, defendant is registered to do business in the State of New York.

4.     Upon information and belief, defendant was formerly known as Science Applications International Corporation ("SAIC").

5.     Upon information and belief, prior to April 21, 2010, SAIC entered into an agreement with the United States Army pursuant to the NCM3 Program to design and manufacture a helicopter flight simulator (the "Prime Contract").

6.     Binghamton Simulator Company, Inc. was, on April 21, 2010, a corporation organized and existing pursuant to the laws of the State of New York.

7.      Binghamton Simulator Company, Inc. ("Binghamton Simulator") was engaged, among other things, in the design and manufacture of flight simulators, including computer software integral to the manufacture and operation of flight simulators.

8.      On or about April 22, 2010, Binghamton Simulator, as "Seller," entered into a Subcontract Agreement with SAIC, as "Buyer," with an effective date of April 21, 2010, to perform certain work covered by the Prime Contract. A copy of the Subcontract Agreement is annexed hereto as Exhibit A.

9.      Among other things, Binghamton Simulator was obligated by the Subcontract Agreement to provide software, which it had previously developed at great expense. Portions of the software were developed under the auspices of the United States Government's Small Business Innovation Research ("SBIR") Program, and other portions were developed entirely at Binghamton Simulator's expense.

10.     Section 18.0 of the Subcontract Agreement provided in part as follows:

**18.0    Intellectual Property Rights**

Notwithstanding any other provision herein, Buyer and Seller shall each retain ownership of, and all rights, title and interest to, their respective, pre-existing Intellectual Property. This subcontract will incorporate the standard DFARS clauses regarding rights in Intellectual Property to include technical data and computer software.

The Seller agrees that it will provide the government with Unlimited Rights in all technical data, computer software (including source code), and computer software documentation that is developed under the NCM3 Program. The Seller further agrees that all technical data, computer software, and computer software documentation delivered under this Agreement and not described below shall be delivered with Unlimited Rights as that term is defined at DFARS clause 252.227-7013 and DFARS clause 252.227-7014.

Any previously developed technical data, computer software, or computer software documentation developed by the Seller with mixed funding, including any and all legacy system intellectual property developed by the Seller with

2

mixed funding, will be provided to the Government with not less than Government Purpose Rights as that term is defined at DFARS clause 252.227-7013 and DFARS clause 252.227-7014. The Seller will try to secure the maximum level of rights for all Intellectual property identified and acquired in performance of the NCM3 Program. The Buyer must approve any technical data, computer software, or computer software documentation that the contractor proposes to provide with other than Unlimited Rights. Technical data, computer software, and computer software documentation that the parties agree will not be delivered with Unlimited Rights must then be incorporated into this Agreement below. Specially negotiated license agreements must be attached to this Agreement by Supplemental Agreement.

11.    In computer software, a module is a part of a program. Programs are composed of one or more independently developed modules that are not combined until the program is linked.

12.    Binghamton Simulator's software consisted of twelve modules, including (a) Information Application Software; (b) Ballistics Application Software; (c) Engineering Units Application Software; (d) Flight Application Software; (e) Weapon Application Software; (f) Formation Flight Application Software; (g) Image Generator Interface Application Software; (h) Sling Load Application Software ("Sling Load"); (i) Hoist Application Software ("Hoist"); (j) Network Application Software; (k) Water Bucket Application Software; and (l) Emergency Procedures Application Software.

13.    The Hoist and Sling Loads computer software are integral and essential to the overall software operation. Because the Hoist and Sling Loads computer software and the Hoist technical data were developed pursuant to the SBIR Program, Binghamton Simulator was entitled to protection that would have allowed the Army to use the software and technical data and provide it to support service contractors, but would not allow it to provide the software or technical data to Binghamton Simulator competitors.

14.    SAIC agreed to purchase single-use licenses pay royalties for the software, one for each unit, for negotiated prices. The license fee for the original unit was to be $144,755.00.

3

The license fee for the second unit was to be $124,200.00. The license fee or royalty for each additional unit was to be $90,000. The amounts of the license fees were memorialized in Cost Proposals and other subcontract documents.

15.     Binghamton Simulator performed all duties pursuant to the Subcontract Agreement for the first unit, and SAIC paid the License Fee of $144,755.00. Subsequently, by July 16, 2010 amendment to the Subcontract Agreement, Binghamton Simulator was awarded a Subcontract for the second simulator unit. The second Subcontract provided for a license fee for the software in the previously negotiated amount of $124,000.

16.     In or around August 2011, prior to the completion of the second unit, SAIC terminated Binghamton Simulator's second Subcontract, allegedly "for convenience." SAIC did, however, pay the $124,200.00 license fee for the second unit.

17.     Upon information and belief, the source of the payments for the licenses for the first two units was the United States Government. However, the obligation to pay the license fees to Binghamton Simulator rested with SAIC, not the Government.

18.     Subsequently, upon information and belief, SAIC was awarded additional contracts by the Army for additional units. Further, upon information and belief, defendant has utilized the software previously provided by Binghamton Simulator. However, defendant did not pay Binghamton Simulator the agreed-upon license fee or royalty of $90,000 for each additional unit. Upon information believe, SAIC received contracts for at least sixteen additional units after the first two.

19.     The Army has taken the position that it acquired the software, including the Hoist and Sling Load components, with "Government Purpose Rights" rather than SBIR rights, which

4

carries the risk that the Binghamton Simulator software will enter the public domain.  Plaintiff does not presently know whether that has occurred.

20.      The Government also refused to approve the payment of any further license fees. Defendant, who had and has the obligation to pay the fees and/or royalties, in turn has used that fact as an excuse to avoid its obligations to Binghamton Simulator.

21.      Upon information and belief, when defendant provided Binghamton Simulator's software to the Army it did not, as required by DFARS 252.227-7014 (e) and (k)(3) ensure that Binghamton Simulator's SBIR rights were recognized and protected in identifying, asserting, and delivering the software to the Army.

22.      In January 2012, BSC Partners, LLC purchased all of Binghamton Simulator's personal property at a Uniform Commercial Code Article 9 sale conducted by Binghamton Simulator's primary secured lender, Manufacturers and Traders Trust Company.  As a result of the sale, BSC Partners became the owner of Binghamton Simulator's intellectual property, including the software.  BSC Partners also became the owner, among other things, of Binghamton Simulator's causes of action, including Binghamton Simulator's causes of action, including its claims against defendant.

23.      In or around February 2014, plaintiff BSC Associates, LLC purchased all of Binghamton Simulator's assets, including its software and causes of action

## FIRST CAUSE OF ACTION

24.      Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 of this complaint.

5

25.   By transmitting the Binghamton Simulator technical data and software to the Army without asserting the SBIR data rights for the Hoist and Sling Loads software and the Hoist technical data, defendant breached the Subcontract Agreement, originally and as amended.

26.   In addition, defendant, by its actions, violated DFARS 252.227-7014(k)(3), which provides:

> The Contractor shall ensure that subcontractor or supplier rights are recognized and protected in the identification, assertion, and delivery processes required by paragraph (e) of this clause.

27.   In addition, by failing to pay the $90,000 per unit license fee or royalty for each unit subsequent to the second, defendant breached the Subcontract Agreement, originally and as amended.

28.   Binghamton Simulator performed all obligations required of it under the agreements.

29.   As a result of defendant's breaches of contract, plaintiff has been damaged in an amount to be determined after trial.

## SECOND CAUSE OF ACTION

30.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 of this complaint.

31.   Defendant, by utilizing the Binghamton Simulator software for units subsequent to the second without paying license fees or royalties to Binghamton Simulator, BSC Partners, or plaintiff, has been unjustly enriched.

32.   Plaintiff has been damaged as aforesaid.

## THIRD CAUSE OF ACTION

6

33.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 of this complaint.

34.     DFARS 252.227-7014(k)(2) provides:

The Contractor and higher tier subcontractors or suppliers shall not use their power to award contracts as economic leverage to obtain rights in computer software or computer software documentation from their subcontractors or suppliers.

35.     Defendant, by its actions, is in violation of DFARS 252.227-7014(k)(2).

36.     As a result of defendant's actions, plaintiff has been damaged as aforesaid.

**WHEREFORE,** plaintiff demands judgment against defendant for monetary damages in an amount to be determined after trial, together with the costs and disbursements of this action, and whatever other or further relief which the Court may deem just and proper.

Dated:      Binghamton, New York
            April 18, 2014

Albert J. Millus, Jr., Esq.
HINMAN, HOWARD & KATTELL, LLP
Attorneys for Plaintiff
700 Security Mutual Building
80 Exchange Street
P. O. Box 5250
Binghamton, New York 13902-5250
Telephone: (607) 723-5341

**EXHIBIT A**

BSC w/o 4421



## SUBCONTRACT AGREEMENT
### Cost Plus Fixed Fee

| SUBCONTRACTOR: | SUBCONTRACT #: P010036217 |
|---|---|
| Binghamton Simulator Company | DPAS RATING: None |
| ADDRESS: 151 Court St. | TYPE:   Cost Plus Fixed Fee |
| Binghamton, NY 13901 | CEILING PRICE: $3,175,741.00 |

### INTRODUCTION

This Subcontract Agreement, effective 21 April 2010 is made between SCIENCE APPLICATIONS INTERNATIONAL CORPORATION (hereinafter known as "Buyer"), a Delaware corporation with principal offices in San Diego, California, and **Binghamton Simulator Company** (hereinafter known as "Seller"), a New York Corporation with principal offices in **Binghamton, NY** The effort to be performed by Seller under this Subcontract will be part of Buyer's Prime Contract W900KK-09-D-0323 DO # 03 which has been issued by United States Army Program Executive Office (PEO) for Simulation, Training and Instrumentation (STRI) Acquisition Center. The work, defined in Attachment I (Statement of Work and Schedule) will be performed on a Cost Plus Fixed Fee basis, in accordance with Schedule A (Specific Terms and Conditions),) and any referenced documents in 19.0 Order of Precedence section of this agreement.

### SCHEDULE A
### SPECIFIC TERMS AND CONDITIONS

#### 1.0 PERIOD OF PERFORMANCE
The term for this Agreement is 27 January 2010 through 30 November 2011 unless amended in writing by mutual agreement of the parties.  Costs incurred on or after 27 January 2010 shall be allowable to the extent that they would have been allowable if incurred after the effective date of this subcontract.  Seller is not obligated to continue work or provide services and Buyer is not obligated to compensate Seller for expenses incurred or commitments made before or after these dates.

#### 1.1 ESTIMATED COST AND FIXED FEE
The total estimated cost and fixed fee for the work to be performed under this Subcontract are:

| Description | Cost | Fixed Fee- 11% | TOTAL |
|---|---|---|---|
| CLIN Program Management | $382,052.25 | $42,025.75 | $424,078.00 |
| CLIN 0001AA | $181,819.82 | $20,000.18 | $201,820.00 |
| CLIN 0001AB | $1,673,545.05 | $184,089.95 | $1,857,635.00 |
| CLIN 0001AC | $30,317.12 | $3,334.88 | $33,652.00 |
| CLIN 0008 Sling Load Option | $52,159.46 | $5,737.54 | $57,897.00 |
| CLIN 0009 Hoist Option | $203,343.24 | $22,367.76 | $225,711.00 |
| CLIN 0010 Interoperability Option | $6,209.91 | $683.09 | $6,893.00 |
| CLIN 0011 Water Bucket Option | $7,756.76 | $853.24 | $8,610.00 |
| CLIN 0013 Emergency Response Option | $2,070.27 | $227.73 | $2,298.00 |
| CLIN 0005 Spares | $321,754.05 | $35,392.95 | $357,147.00 |
| Total | $2,861,027.93 | $314,713.07 | $3,175,741.00 |



## 1.2 FUNDING

This Subcontract is incrementally funded in the amount of $263,213.85 including cost and applicable fee, through 30 June 2010. Unless this Subcontract is amended in writing by mutual agreement of the parties, Seller is not obligated to incur expenses or make commitments in excess of this amount and Buyer is not obligated to compensate Seller beyond the amount stated.

*Current Funding is detailed as follows:*

| Line | Description | Charge Number | Funding |
|------|-------------|---------------|---------|
| 01 | Program Mgt. Labor Cost | 190035.00.01AA.33120.1090B | $57,307.97 |
| 02 | Program Mgt. Labor Fee | 190035.00.01AA.33120.1090B | $6,303.88 |
| 03 | NCM3 Tech Rvws. AA Labor Cost | 190035.00.01AA.33100.1070B | $26,255.86 |
| 04 | NCM3 Tech Rvws. AA Labor Fee | 190035.00.01AA.33100.1070B | $2,886.14 |
| 05 | NCM3 Tech Rvws. AA Travel Cost | 190035.00.01AA.33100.1070B | $14,051.35 |
| 06 | NCM3 Tech Rvws. AA Travel Fee | 190035.00.01AA.33100.1070B | $1,545.65 |
| 07 | NCM3 SW RA Labor Cost | 190035.00.01AA.32031.1010B | $50,222.52 |
| 08 | NCM3 SW RA Labor Fee | 190035.00.01AA.32031.1010B | $5,524.48 |
| 09 | NCM3 HW PD Labor Cost | 190035.00.01AA.32021.1020B | $89,291.89 |
| 10 | NCM3 HW PD Labor Fee | 190035.00.01AA.32021.1020B | $9,822.11 |
| | | **Total Funding** | **$263,213.85** |

## 1.3 ALLOWABLE COST AND PAYMENT

Upon receipt and approval by Buyer of proper invoices in accordance with paragraph 1.6 below, payment of allowable cost shall be Net 30 days in accordance with FAR Clause No. 52.216-7 "Allowable Cost and Payment" and applicable agency supplements thereto, if any. In addition, FAR Clause No. 52.232-20 "Limitation of Cost" and FAR Clause 52.232-22 "Limitation of Funds" are hereby incorporated by reference. Seller shall adjust its allowable indirect costs under this Subcontract simultaneously with Seller's submittal of its final indirect cost rate proposal in accordance with FAR 52.216-7(d)(2)(I). In the event that Seller's final indirect cost rates, as determined by the Government in accordance with FAR 52.216-7(d)(2)(II), vary from Seller's proposed rates, Seller shall adjust its allowable indirect costs within 30 days of such determination. In the event Seller fails to timely make such adjustments, or to certify to Buyer that no adjustments are required to Seller's allowable indirect costs, Buyer shall be under no obligation to consider subsequent requests by Seller to increase its allowable indirect costs under this Subcontract.

Note: "Seller may select Automated Clearing House Credits ("ACH funds transfer"), as the means of settlement. With regard to such ACH funds transfer, a payment from Buyer to Seller shall be considered timely with respect to any payment due date contained herein if the ACH funds transfer is completed no later than four (4) business days after such payment due date. Buyer shall not be in breach of these terms and conditions, or suffer any loss of discount or other penalty, with respect to an ACH funds transfer that was initiated properly and timely by Buyer to the extent its completion is delayed because of failure or delay by the ACH funds transfer system, the operation of an ACH funds transfer system rule which could not be anticipated by Buyer, or rejection by the Seller's bank."

## 1.4 FIXED FEE

The Buyer shall pay the Seller for performing this contract the Fixed Fee specified in the Schedule. Payment of the Fixed Fee shall be made in installments based on the percentage of completion of the work as determined from estimates submitted to and approved by the Buyer, but subject to the withholding provisions as follows: After the payment of 90 percent of the fixed fee, the Buyer may withhold further payment of fee until a reserve is set aside in an amount that the Buyer considers necessary to protect the Buyer's interest. This reserve shall not exceed 10 percent of the total fixed fee.



**1.5 INSPECTION**

All materials furnished and services performed pursuant hereto shall be subject to inspection and test by Buyer and its agents and by its customers at all times and places, during the period of performance, and in any event before acceptance. In the event that material furnished or services supplied are not performed in accordance with the specifications and instructions of Buyer, Buyer may require Seller to replace or correct services or materials. The cost of replacement or correction shall be determined under the Allowable Cost and Payment clause of this subcontract, but no additional fee shall be paid. If the Seller fails to proceed with reasonable promptness to perform required replacement or correction, and if the replacement or correction cannot be performed within the ceiling price, the Buyer may terminate the subcontract for default.

**1.6 INVOICES**

Invoices shall be prepared in duplicate and list cost elements in the same manner as set forth in Section 1.2 based on Seller's proposal. The invoices shall contain the following information; subcontract number, line item(s) being invoiced. Material costs and other direct costs will be separate items. Invoices shall be emailed to: Kristin Johnson at Johnsonkri@saic.com.

Invoices shall clearly reference a unique invoice number on each invoice, period of incurred costs, and the date of the invoice. Invoices shall include the "Amount Previously Billed," the "Amount of this Invoice," the "Total Amount Billed to Date", and the "Amount of Withhold". Seller shall submit invoices for the full amount stating the amount of withhold/retention for each line item billed.

| Example: | | |
|---|---|---|
| Labor | $10,000.00 | |
| ODC's | $1,000.00 | |
| Fixed Fee | $800.00 | |
| Less Withhold | <$120.00> | |
| Total Amount Owed | $11,680.00 | |

Invoices shall be singed and dated by the cognizant Contractual Representative of the Seller, verifying the costs included are correct. The following statement will be executed for all invoices submitted.

"I have reviewed the accuracy of the hours and costs for each line item(s) billed. I confirm they are correct as stated."

**1.7 AUDIT**

At any time before final payment the Buyer may request the Government to perform an audit of the invoices and substantiating material. Each payment previously made shall be subject to reduction to the extent of amounts that are found by the Government not to have been properly payable in accordance with the payment terms of this subcontract. Audit will include, but not be limited to, individual daily job time cards, invoices for material, storeroom requisitions, expense reports, and other substantiation supporting invoiced amounts.

**1.8 WARRANTY**

Seller represents and warrants (1) that the rates charged for the goods and/or services purchased pursuant hereto shall be no higher than Seller's current rates to any other customer for the same quality and quantity of such goods or services; (2) that all goods and services delivered pursuant hereto will be new, unless otherwise specified, and free from defects in material and workmanship; (3) that all goods and services will conform to applicable specifications, drawings, and standards of quality and performance, and that all items will be free from defects in design and suitable for their intended purpose; (4) that the goods covered by this order are fit and safe for consumer use, if so intended. All representations and warranties of Seller together with its service warranties and guarantees, if any, shall run to Buyer and Buyer's customers The foregoing warranties shall survive any delivery, inspection, acceptance, or payment by Buyer.



## 2.0 TECHNICAL AND CONTRACTUAL REPRESENTATIVES

The following authorized representatives are hereby designated for this Subcontract:

SELLER:                                                BUYER:

      TECHNICAL:  Barry Wolf              TECHNICAL:  Brett Ulander

      CONTRACTUAL:  Barbara Blincoe      CONTRACTUAL:  Kristin Johnson

### 2.1 CONTACTS

Contacts with Buyer that affect the subcontract prices, schedule, statement of work, and subcontract terms and conditions shall be made with the authorized contractual representative. No changes to this Subcontract shall be binding upon Buyer unless incorporated in a written modification to the Subcontract and signed by Buyer's contractual representative.

### 2.2 CHANGES

Buyer may, by written notice to Seller at any time before completion of this subcontract, make changes within the general scope of this subcontract in any one of the following: (a) drawings, designs, or specifications; (b) quantity; (c) place of delivery; (d) method of shipment or routing; and (e) make changes in the amount of Buyer furnished property. If any such change causes a material increase or decrease in the estimated cost of, or the time required for the performance of any part of the work under this subcontract, the Buyer shall make an equitable adjustment in the estimated cost, delivery schedule, or amount of any fixed fee and shall modify the subcontract. The Seller must have notified Buyer in writing of any request for such adjustment within twenty (20) days from the date of such notice from Buyer or from the date of any act of Buyer that Seller considers constitutes a change. Failure to agree to any adjustment shall be a dispute under the Disputes clause of this subcontract. Seller shall proceed with the work as changed without interruption and without awaiting settlement of any such claim. However, Seller shall not be obligated to continue performance or incur costs beyond the point established in the "Limitation of Cost" or "Limitation of Funds" clause of this subcontract.

### 3.0 DISCLOSURE

Seller shall not disclose information concerning work under this Subcontract to any third party, unless such disclosure is necessary for the performance of the subcontract effort. No news releases, public announcement, denial or confirmation of any part of the subject matter of this Subcontract or any phase of any program hereunder shall be made without prior written consent of Buyer. The restrictions of this paragraph shall continue in effect upon completion or termination of this Subcontract for such period of time as may be mutually agreed upon in writing by the parties. In the absence of a written established period, no disclosure is authorized. Failure to comply with the provisions of this Clause may be cause for termination of this subcontract.

### 4.0 KEY PERSONNEL

(a) For purposes of this clause, Buyer and Seller define "Key Personnel" as those individuals who are mutually recognized as essential to the successful completion and execution of this Subcontract.

(b) Personnel designated as "Key Personnel" shall be assigned to the extent necessary for the timely completion of the task to which assigned. Any substitution or reassignment involving Seller's "Key Personnel" assigned to this work shall be made only with persons of equal abilities and qualifications and is subject to prior approval of Buyer, in writing.

(c) Buyer reserves the right to direct the removal of any individual assigned to this Subcontract.

(d) Seller's Key Personnel are: None

### 5.0 ASSIGNMENTS AND SUBCONTRACTS

This Subcontract is not assignable and shall not be assigned by Seller without the prior written consent of Buyer. Further, Seller agrees to obtain Buyer's approval before subcontracting this order or any substantial portion thereof; provided, however, that this limitation shall not apply to the purchase of standard commercial supplies or raw materials.

Subcontract P010036217



## 6.0 INSURANCE PROVISION FOR PROCUREMENT CONTRACTS

Without prejudice to Seller's liability to indemnify Buyer as stated in any indemnification provision contained in this Agreement, Seller shall procure at its expense and maintain for the duration of this Agreement, and ensure that any of its subcontractors used in connection with this Agreement procure and maintain, the insurance policies required below with financially responsible insurance companies, and with policy limits not less than those indicated below.

(a) Workers' Compensation: Coverage for statutory obligations imposed by laws of any State in which the work is to be performed, including where applicable, coverage under the United States Longshoremen's and Harbor Workers' Act (USL&H), the Jones Act, and the Defense Base Act (DBA). In addition, the policy shall be endorsed to waive the insurer's rights of subrogation in favor of Buyer.

(b) Employer's Liability: Coverage for injuries to employees not covered by workers' compensation with limits of at least $1,000,000 each accident, $1,000,000 each employee by disease, and $1,000,000 policy limit by disease. In addition, the policy shall be endorsed to waive the insurer's rights of subrogation in favor of Buyer.

(c) Commercial General Liability: Coverage for third party bodily injury and property damage, personal injury, products and completed operations, contractual liability, and independent contractors' liability with limits not less than $1,000,000 per occurrence and $2,000,000 in the aggregate. Buyer, its officers and employees, and Buyer's customer where required by Buyer's Agreement with its customer, shall be named as Additional Insured and a waiver of subrogation shall be provided in favor of Buyer.

(d) Business Automobile Liability: Coverage for use of all owned, non-owned, and hired vehicles with limits of not less than $1,000,000 per occurrence combined single limit for bodily injury and property damage liability. Buyer, its officers and employees, and Buyer's customer where required by Buyer's Agreement with its customer, shall be named as Additional Insured and a waiver of subrogation shall be provided in favor of Buyer.

(e) Professional Liability: If seller is performing any professional services, coverage for damages (including financial loss) caused by any acts, errors and omissions arising out Seller's performance of professional services with limits of not less than $1,000,000 per claim and $2,000,000 in the aggregate.

(f) All-Risk Property Insurance: Coverage to repair or replace property, including supplies covered by this Agreement, of Buyer and/or Buyer's customer which may be in the possession or control of Seller. Buyer shall be named as a Loss Payee with respect to loss or damage to said property and/or supplies furnished by Buyer. Further, Seller assumes the risk of loss or destruction of or damage to any of its property and its employees' property, whether owned, hired, rented, borrowed, or otherwise. Seller waives and shall ensure that its employees waive all rights of recovery against Buyer and Buyer's customer and their respective employees for any loss, destruction of or damage to any such property.

The required insurance coverage's above shall be primary and non-contributing with respect to any other insurance that may be maintained by Buyer and notwithstanding any provision contained herein, the Seller, and its employees, agents, representatives, consultants, subcontractors and suppliers, are not insured by Buyer, and are not covered under any policy of insurance that Buyer has obtained or has in place.

Any self-insured retentions, deductibles and exclusions in coverage in the policies required under this Article shall be assumed by, for the account of, and at the sole risk of Seller or the subcontractor which provides the insurance and to the extent applicable shall be paid by Seller or such subcontractor. In no event shall the liability of Seller or any subcontractor be limited to the extent of any of insurance or the minimum limits required herein.

Prior to commencement of any work, and within 15 days of any policy renewal that occurs while any work is on-going under this Agreement, Seller shall provide Buyer certificates of insurance evidencing the insurance policies above, including evidence of additional insured status and waivers of subrogation where required. Buyer reserves the right to refuse to accept policies from companies with an A.M. Best Rating of less than A- VII. Seller, or its insurers, shall provide 30 days advance written notice to Buyer in the event of cancellation or material modification of any policy. Failure of Buyer to demand such certificates or to identify any deficiency in the insurance provided shall not be construed as or deemed to be a waiver of Seller's, or its subcontractors', obligations to maintain the above insurance coverage's.

## 7.0 INDEMNIFICATION



From Science to Solutions

(a) Seller shall indemnify, defend and hold SAIC and SAIC's customers harmless from and against any and all damages, losses, liabilities and expenses (including reasonable attorneys' fees) arising out of or relating to any claims, causes of action, lawsuits or other proceedings, regardless of legal theory, that result, in whole or in part, from Seller's (or any of Seller's subcontractors, suppliers, employees, agents or representatives): (i) intentional misconduct, negligence, or fraud, (ii) breach of any representation, warranty or covenant made herein, or (iii) products or services including, without limitation, any claims that such products or services infringe any United States patent, copyright, trademark, trade secret or any other proprietary right of any third party.

(b) Buyer shall promptly notify Seller of any claim against Buyer that is covered by this indemnification provision and shall authorize representatives of Seller to settle or defend any such claim or suit and to represent Buyer in, or to take charge of, any litigation in connection therewith.

## 8.0 INFRINGEMENT INDEMNITY

(a) In lieu of any warranty by Buyer or Seller against infringement, statutory or otherwise, it is agreed that Seller shall defend, at its expense, any suit against Buyer or its customers based on a claim that any item furnished under this order or the normal use or sale thereof infringes any U.S. Letters patent or copyright, and shall pay costs and damages finally awarded in any such suit, provided that Seller is notified in writing of the suit and given authority, information, and assistance at Seller's expense for the defense of same. If the use or sale of said item is enjoined as a result of such suit, Seller, at no expense to Buyer, shall obtain for Buyer and its customers the right to use and sell said item or shall substitute an equivalent item acceptable to Buyer and extend this patent indemnity thereto.

(b) Notwithstanding the foregoing paragraph, when this order is performed under the Authorization and Consent of the U.S. Government to infringe U.S. Patents, Seller's liability for infringement of such Patents in such performance shall be limited to the extent of the obligation of Buyer to indemnify the U.S. Government.

## 9.0 CONFIDENTIALITY AND USE OF PARTY's FURNISHED ITEMS/INFORMATION

Each Party agrees that it will keep confidential and not disclose, disseminate or publish the features of any equipment, tools, gauges, patterns, designs, drawings, engineering data, computer programs and software or other technical or proprietary information furnished, loaned or bailed by the other Party hereunder (hereinafter collectively referred to as "Items/Information", and use such Items/Information only in the performance of this Subcontract or, if authorized, other orders from the other party and not otherwise, without the other parties prior written consent. Notwithstanding any other provision herein, each party shall each retain ownership of, and all right, title and interest in and to, they're respective pre-existing intellectual Property.

All such items furnished, loaned or bailed by either party hereunder, or fabricated, manufactured, purchased, or otherwise acquired by either party for the performance of this Subcontract and specifically charged to the respective party, are the property of the respective party.

Upon completion, expiration or termination of this Subcontract, each party shall return all such items in good condition, reasonable wear only excepted, together with all spoiled and surplus items to the other party, or make such other disposition thereof as may be directed or approved by the other party. Each party agrees to replace, at its expense, all such items not so returned. Each party shall make no charge for any storage, maintenance or retention of such items.

Each party shall bear all risk of loss for all such items in their possession.

Each party also agrees to use any designs or data contained or embodied in such items in accordance with any restrictive legends placed on such items by the other party or any third party. If one party furnishes any material for fabrication hereunder, the other party agrees: (i) not to substitute any other material for such fabrication without the other party's prior written consent, and (ii) that title to such material shall not be affected by incorporation in or attachment to any other property.

## 10.0    DISPUTES

Any dispute not disposed of in accordance with the "Disputes Clause" of Schedule B, if any, shall be determined in the following manner.

(a) Buyer and Seller agree to enter into Negotiation to resolve any dispute. Both parties agree to negotiate in good faith to reach a mutually agreeable settlement within a reasonable amount of time.



(b) If negotiations are unsuccessful, Buyer and Seller agree to enter into binding Arbitration. The American Arbitration Association (AAA) Commercial Arbitration Rules (most recent edition) are to govern this Arbitration. The Arbitration shall take place in the County of San Diego, State of California. The Arbitrator shall be bound to follow the applicable subcontract provisions and California law in adjudicating the dispute. It is agreed by both parties that the Arbitrator's decision is final, and that no party may take any action, judicial or administrative, to overturn this decision. The judgment rendered by the Arbitrator may be entered in any court having jurisdiction thereof.

Pending any decision, appeal or judgment referred to in this provision or the settlement of any dispute arising under this Subcontract, Seller shall proceed diligently with the performance of this Subcontract.

## 11.0   DEFAULT

(a) The Buyer may, by written notice of default to the Seller, terminate the whole or any part of this Subcontract in any one of the following circumstances: (i) If Seller fails to make progress in the work so as to endanger performance or in either (ii) If Seller fails to perform any of the other provisions of this Subcontract in accordance with its terms, and in either of these two circumstances does not cure such failure within a period of 10 days (or such longer period as Buyer may authorize in writing) after receipt of notice from the Buyer specifying such failure; or (iii) Seller becomes insolvent or the subject of proceedings under any law relating to bankruptcy or the relief of debtors or admits in writing its inability to pay its debts as they become due.

(b) If this Subcontract is so terminated, Seller shall submit a final termination settlement proposal to the Buyer. The Seller shall submit the proposal promptly but no later than six (6) months from the effective date of the termination. If Seller fails to submit the proposal within the time allowed, the Buyer may determine the amount, if any, due the Seller because of the termination. The amount will be determined in accordance with FAR Clause 52.249-6 in effect on the date of the prime contract.

(c) Seller shall transfer title and deliver to Buyer, in the manner and to the extent requested in writing by Buyer at or after termination such complete articles, partially completed articles and materials, parts, tools, dies, patterns, jigs, fixtures, plans, drawings, information and contract rights as Seller has produced or acquired for the performance of the terminated part of this Subcontract, and Buyer will pay Seller the contract price for complete articles delivered to and accepted by Buyer and the fair value of the other property of Seller so requested and delivered.

(d) Seller shall continue performance of this Subcontract to the extent not terminated. Buyer shall have no obligations to Seller with respect to the terminated part of this Subcontract except as herein provided. In case of Seller's default, Buyer's rights as set forth herein shall be in addition to Buyer's other rights although not set forth in this Subcontract.

(e) Seller shall not be liable for damages resulting from default due to causes beyond the Seller's control and without Seller's fault or negligence in accordance with FAR Clause 52.249-14 "Excusable Delays" provided, however, that if Seller's default is caused by the default of a subcontractor or supplier, such default must arise out of causes beyond the control of both Seller and subcontractor or supplier, and without the fault or negligence of either of them and, provided further, the supplies or services to be furnished by the subcontractor or supplier were not obtainable from other sources.

## 12.0   SUBCONTRACT CLOSEOUT

Within sixty-calendar days after the end of the period of performance for the services to be procured herein, as described in the Attachment I Statement of Work and the satisfactory completion of which shall be solely determined by Buyer, Buyer will issue to Seller a Subcontract Closeout Package. The Package will include, as applicable, Subcontractor Release of Claims; Subcontractor's Assignment of Refunds, Rebates, Credits, and Other Amounts; Subcontract Patents Report; and any other documentation or request for information considered necessary by Buyer to closeout this Subcontract Agreement.

Seller agrees to submit all information and documentation, including a FINAL invoice bearing the statement, "*This FINAL invoice was prepared using final audited rates*" as required by the Subcontract Closeout Package within thirty-calendar days of the date of the Package. The parties further agree if the information and documentation submitted by Seller is found acceptable by Buyer, with or without negotiations (the necessity for which shall be solely determined by Buyer), to be bound by Seller's closeout submission as the final agreement between the parties with respect thereto.

In the event Seller fails to submit the required closeout information and documentation in a timely manner, such failure shall constitute Seller's express agreement that the amounts paid to date by Buyer pursuant to this Agreement, as



determined by Buyer's records, constitute the full, complete and final extent of Buyer's financial obligation to Seller, that Seller does forever fully and finally remise, release, and discharge Buyer, its officers, agents and employees, of and from any and all liabilities, obligations, claims, and demands whatsoever arising under or relating to this Subcontract Agreement, and that Seller expressly authorizes Buyer to rely on the foregoing representations and release in connection with Buyer's closeout of or other actions taken with respect to Buyer's contract with the Government. Furthermore, such failure is considered to be a material breach of the terms of this agreement and may subject seller to forfeiture of all or part of the fee withhold prescribed by Article 1.4.

### 13.0 GENERAL RELATIONSHIP
The Subcontractor is not an employee of SAIC for any purpose whatsoever. Seller agrees that in all matters relating to this Subcontract it shall be acting as an independent contractor and shall assume and pay all liabilities and perform all obligations imposed with respect to the performance of this Subcontract. Seller shall have no right, power or authority to create any obligation, expressed or implied, on behalf of Buyer and/or the Government and shall have no authority to represent Buyer as an agent.

### 14.0 NON-WAIVER OF RIGHTS
The failure of Buyer to insist upon strict performance of any of the terms and conditions in the Subcontract, or to exercise any rights or remedies, shall not be construed as a waiver of its rights to assert any of the same or to rely on any such terms or conditions at any time thereafter. The invalidity in whole or in part of any term or condition of this subcontract shall not affect the validity of other parts hereof.

### 15.0 APPLICABLE STATE LAW AND COMPLIANCE
This Subcontract shall be governed by and construed in accordance with the laws of the State of California. Seller agrees to comply with the applicable provisions of any federal, state or local law or ordinance and all orders, rules and regulations issued there under.

### 16.0 EXPORT CONTROL COMPLIANCE FOR FOREIGN PERSONS
The subject technology of this Subcontract (together including data, services, and hardware provided hereunder) may be controlled for export purposes under the International Traffic in Arms Regulations (ITAR) controlled by the U.S. Department of State or the Export Administration Regulations ("EAR") controlled by the U.S. Department of Commerce. ITAR controlled technology may not be exported without prior written authorization and certain EAR technology requires a prior license depending upon its categorization, destination, end-user and end-use. Exports or re-exports of any U.S. technology to [any destination under U.S. sanction or embargo are forbidden.

Access to certain technology ("Controlled Technology") by Foreign Persons (working legally in the U.S.), as defined below, may require an export license if the Controlled Technology would require a license prior to delivery to the Foreign Person's country of origin. SELLER is bound by U.S. export statutes and regulations and shall comply with all U.S. export laws. SELLER shall have full responsibility for obtaining any export licenses or authorization required to fulfill its obligations under this Subcontract.

SELLER hereby certifies that all SELLER employees who have access to the Controlled Technology are U.S. citizens, have permanent U.S. residency or have been granted political asylum or refugee status in accordance with 8 U.S.C. 1324b(a)(3). Any non-citizens who do not meet one of these criteria are "Foreign Persons" within the meaning of this clause but have been authorized under export licenses to perform their work hereunder.

### 17.0 STANDARDS OF BUSINESS ETHICS & CONDUCT
SAIC believes in fair and open competition and is committed to conducting its business fairly, impartially and in an ethical and proper manner. SAIC is owned and controlled by its employee owners. These characteristics make it imperative that SAIC employees adhere to a particularly high ethical standard. Employee ownership both demands and fosters highly ethical conduct because SAIC can be successful only when employees look after long-term interests of the company and resist pressures to compromise SAIC standards. Buyer's expectation is that Seller also will conduct its business fairly, impartially and in an ethical and proper manner. If Seller has cause to believe that Buyer or any



employee or agent of Buyer has acted improperly or unethically under this agreement/order, Seller shall report such behavior to the SAIC Ethics Hotline (800) 435-4234. Copies of The Science Applications International Corporation (SAIC) code of Ethics and contacts for such reports are available on www.saic.com under Corporate Governance.

## 18.0   INTELLECTUAL PROPERTY RIGHTS

Notwithstanding, any other provision herein, Buyer and Seller shall each retain ownership of, and all rights, title and interest in and to, their respective, pre-existing Intellectual Property.  This subcontract will incorporate the standard DFARS clauses regarding rights in Intellectual Property to include technical data and computer software.

The Seller agrees that it will provide the government with Unlimited Rights in all technical data, computer software (including source code), and computer software documentation that is developed under the NCM3 Program. The Seller further agrees that all technical data, computer software, and computer software documentation delivered under this Agreement and not described below shall be delivered with Unlimited Rights as that term is defined at DFARS clause 252.227-7013 and DFARS clause 252.227-7014.

Any previously developed technical data, computer software, or computer software documentation developed by the Seller with mixed funding, including any and all legacy system intellectual property developed by the Seller with mixed funding, will be provided to the Government with not less than Government Purpose Rights as that term is defined at DFARS clause 252.227-7013 and DFARS clause 252.227-7014.  The Seller will try to secure the maximum level of rights for all intellectual property identified and acquired in performance of the NCM3 Program. The Buyer must approve any technical data, computer software, or computer software documentation that the contractor proposes to provide with other than Unlimited Rights. Technical data, computer software, and computer software documentation that the parties agree will not be delivered with Unlimited Rights must then be incorporated into this Agreement below.  Specially negotiated license agreements must be attached to this Agreement by Supplemental Agreement.

| Technical Data to be Furnished With Restrictions | Basis for Assertion | Asserted Rights Category | Name of Person Asserting Restrictions |
|---|---|---|---|
| Hoist | BSC SBIR Developed | SBIR/Patent | E. Terry Lewis |

| Computer Software to be Furnished with Restrictions | Basis for Assertion | Asserted Rights Category | Name of Person Asserting Restrictions |
|---|---|---|---|
| Units | BSC Developed | Limited | E. Terry Lewis |
| Flight | BSC Developed | Limited | E. Terry Lewis |
| Instr Oper Station | BSC Developed | Limited | E. Terry Lewis |
| Ballistics | BSC Developed | Limited | E. Terry Lewis |
| Weapons | BSC Developed | Limited | E. Terry Lewis |
| Formation Flight | BSC Developed | Limited | E. Terry Lewis |
| Network | BSC Developed | Limited | E. Terry Lewis |
| Hoist | BSC SBIR Developed | SBIR | E. Terry Lewis |
| Sling Loads | BSC SBIR Developed | SBIR | E. Terry Lewis |
| IG Interface | BSC Developed | Limited | E. Terry Lewis |
| Water Bucket | BSC Developed | Limited | E. Terry Lewis |
| Emergencies and Responses | BSC Developed | Limited | E. Terry Lewis |

| Computer Software Documentation to be Furnished with | Basis for Assertion | Asserted Rights Category | Name of Person Asserting Restrictions |
|---|---|---|---|

Subcontract P010036217



**SAIC**
From Science to Solutions

| Restrictions | | | |
|---|---|---|---|
| None | | | |

**19.0   ORDER OF PRECEDENCE**

The documents listed below are hereby incorporated by reference. In the event of an inconsistency or conflict between or among the provisions of this Subcontract, the inconsistency shall be resolved by giving precedence in the following order:

1)  Schedule A:  Specific Terms and Conditions Form 9-932-026 (Rev.9/25/06).
2)  Schedule B: Part I U.S. Government Terms and Conditions FAR Clauses, Form 9-932-031 (Rev. 12/04/07).
3)  Schedule B: Part II U.S Government Terms and Conditions- DFAR Clauses, Form 9-9332-035 (Rev. 7/20/07).
4)  Attachment I:  Statement of Work and Schedule dated 02 April 2010.
5)  Attachment II: U.S. Government Property Enclosure 2 (Rev.4/09).
6)  Attachment III: DD254- *To be forthcoming*

**20.0   ENTIRE AGREEMENT**

The parties hereby agree that this Subcontract, including all documents incorporated herein by reference, shall constitute the entire agreement and understanding between the parties hereto and shall supersede and replace any and all prior or contemporaneous representations, agreements or understandings of any kind, whether written or oral, relating to the subject matter hereof.

In witness whereof, the duly authorized representatives of Buyer and the Seller have executed this Subcontract on the Dates shown.

SELLER:
**BINGHAMTON SIMULATOR COMPANY**

SCIENCE APPLICATIONS INTERNATIONAL CORPORATION

*(Company Name)*

x  _E Terry Lewis_
(Signature)

x  _Kristin R. Johnson_
(Signature)

NAME:  E TERRY LEWIS

NAME: KRISTIN R. JOHNSON

*(Type or Print)*

*(Type or Print)*

TITLE:  PRESIDENT

TITLE: SUBCONTRACTS ADMINISTRATOR

DATE:  4/22/10

DATE: 4/22/10

Subcontract P010038217



## SCHEDULE B - U.S. GOVERNMENT TERMS AND CONDITIONS
*Applicable to all U.S. Government subcontracts*
### PART I - FAR CLAUSES

### 1.  DEFINITIONS
In all such clauses, unless the context of the clause requires otherwise, the term "Contractor" shall mean Seller, the term "Contract" shall mean this Order, and the terms "Government," "Contracting Officer" and equivalent phrases shall mean Buyer and Buyer's Purchasing Representative, respectively. It is intended that the referenced clauses shall apply to Seller in such manner as is necessary to reflect the position of Seller as a subcontractor to Buyer, to insure Seller's obligations to Buyer and to the United States Government, and to enable Buyer to meet its obligations under its Prime Contract or Subcontract.
The following definitions apply unless otherwise specifically stated:

"Buyer" - the legal entity issuing this Order.
"Purchasing Representative" - Buyer's authorized representative.
"Seller" - the legal entity which contracts with the Buyer.
"This Order" - this contractual instrument, including changes.
"Prime Contract" - the Government contract under which this Order is issued.
"FAR" - the Federal Acquisition Regulation.

### 2.  IDENTIFICATION OF CONTRACT NUMBERS
Government contract numbers shown on this Order shall be included in subcontracts and purchase orders issued by Seller hereunder.

### 3.  DISPUTES
(a) Notwithstanding any provisions herein to the contrary:

   (1) If a decision relating to the Prime Contract is made by the Contracting Officer and such decision is also related to this Order, said decision, if binding upon Buyer under the Prime Contract shall in turn be binding upon Buyer and Seller with respect to such matter; provided, however, that if Seller disagrees with any such decision made by the Contracting Officer and Buyer elects not to appeal such decision, Seller shall have the right reserved to Buyer under the Prime Contract with the Government to prosecute a timely appeal in the name of Buyer, as permitted by the contract or by law, Seller to bear its own legal and other costs. If Buyer elects not to appeal any such decision, Buyer agrees to notify Seller in a timely fashion after receipt of such decision and to assist Seller in its prosecution of any such appeal in every reasonable manner. If Buyer elects to appeal any such decision of the Contracting Officer, Buyer agrees to furnish Seller promptly with a copy of such appeal. Any decision upon appeal, if binding upon Buyer, shall in turn be binding upon Seller. Pending the making of any decision, either by the Contracting Officer or on appeal, Seller shall proceed diligently with performance of this Order.

   (2) If, as a result of any decision or judgment which is binding upon Seller and Buyer, as provided above, Buyer is unable to obtain payment or reimbursement from the Government under the Prime Contract for, or is required to refund or credit to the Government, any amount with respect to any item or matter for which Buyer has reimbursed or paid Seller, Seller shall, on demand, promptly repay such amount to Buyer. Additionally, pending the final conclusion of any appeal hereunder, Seller shall, on demand, promptly repay any such amount to Buyer. Buyer's maximum liability for any matter connected with or related to this Order which was properly the subject of a claim against the Government under the Prime Contract shall not exceed the amount of Buyer's recovery from the Government.

   (3) If this Order is issued by Buyer under a Government Subcontract rather than a Prime Contract, and if Buyer has the right under such Subcontract to appeal a decision made by the Contracting Officer under the Prime Contract in the name of the Prime Contractor (or if Buyer is subject to any arbitrator's decision under the terms of its subcontract), and said decision is also related to this Order, this Disputes Clause shall also apply to Seller in a manner consistent with its intent and similar to its application had this Order been issued by Buyer under a Prime Contract with the Government.

**SAIC**
*From Science to Solutions*

(4) Seller agrees to provide certification that data supporting any claim made by Seller hereunder is made in good faith and that the supporting data is accurate and complete to the best of Seller's knowledge or belief, all in accordance with the requirements of the Contract Disputes Act of 1978 (41USC601-613) and implementing regulations. If any claim of Seller is determined to be based upon fraud or misrepresentation, Seller agrees to defend, indemnify and hold Buyer harmless for any and all liability, loss, cost or expense resulting therefrom.

(b)  Any dispute not addressed in paragraph (a) above, will be subject to the disputes clause of Schedule A of this subcontract agreement.

## 4.  OTHER GOVERNMENT PROCUREMENT
Nothing contained herein shall be construed as precluding the Seller from producing items for direct sale to the Government, utilizing therefore all hardware and/or software, including designs, drawings, engineering data or other technical or proprietary information furnished Seller by Buyer, provided the Government has the unrestricted right to permit the use thereof for such purpose.

## 5.  INDEMNIFICATION - COST OR PRICING DATA - COST ACCOUNTING STANDARDS
Seller agrees to indemnify and hold Buyer harmless to the full extent of any cost or price reduction effected by Buyer's customer, which may result from (i) certified cost or pricing data submitted by Seller or its lower-tier subcontractors which is not accurate, current or complete as certified by Seller; (ii) the failure by Seller or its lower-tier subcontractors to disclose and consistently follow applicable cost accounting practices and standards or otherwise comply with pertinent parts of the FAR, applicable agency supplements thereto, and regulations promulgated by the Cost Accounting Standards Board.

## 6.  TERMINATION FOR CONVENIENCE
The Buyer may terminate performance of work under this subcontract in whole, or in part if the Purchasing Representative determines that a termination is in the Buyer's interest.  The Buyer shall terminate by delivering to the Seller a Notice of Termination specifying the extent of termination and the effective date. If this is a Fixed Price subcontract, the termination will be in accordance with FAR 52.249-2 and FAR 52.249-4.  If this is a Cost Reimbursable subcontract, the termination will be in accordance with FAR 52.249-6.  If this is a Fixed Price or Cost Reimbursement subcontract for research & development with Educational or Other Nonprofit Institutions, then termination will be in accordance with FAR 52.249-5.

## 7.  CONTRACT COST PRINCIPLES AND PROCEDURES
Seller agrees that to the extent applicable, costs allocated to this contract shall be in full compliance with Subpart 31.2 of FAR (Subpart 31.3 for Educational Institutions) and the applicable agency supplements thereto, if any, set forth in Part II hereof. In the event such compliance is not maintained, Seller agrees to compensate Buyer to the full extent of any prices or costs, including any penalties or interest that are determined by Buyer's customer to be unallowable or unreasonable or not allocable, under Buyer's contract with its customer.

## 8.  FAR CLAUSES APPLICABLE TO THIS ORDER
The clauses in FAR Subpart 52.2 referenced in subparagraph (a), the clauses applicable at the dollar thresholds in subparagraph (b), and those clauses referenced and checked in subparagraph (c) below, in effect on the date of this Order, are incorporated herein and made a part of this Order. To the extent that an earlier version of any such clause is included in the Prime Contract or Subcontract under which this Order is issued, the date of the clause as it appears in such Prime Contract or Subcontract shall be controlling and said version shall be incorporated herein.

## 9.  ANTI-KICKBACK ACT OF 1986



By accepting this Order, Seller certifies that it has not offered, provided, or solicited and will not offer, provide, or solicit any kickback in violation of FAR 52.203-7 or the Anti-Kickback Act of 1986 (41 USC §§ 51-58), both of which are incorporated herein by this specific reference, except that paragraph (c)(1) of FAR 52.203-7 shall not apply unless this Order exceeds $100,000.   "Kickback" means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided, directly or indirectly, for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or a subcontract relating to a prime contract. Seller agrees to indemnify, defend, and hold Buyer harmless from and against any losses, liabilities, offsets and expenses (including reasonable attorney's fees) arising out of or relating to Seller's failure to comply with the provisions of the Anti-Kickback Act or FAR 52.203-7.

(a)  The following clauses are applicable to this Order:

| Clause # & FAR Ref. | Title of Clause |
| --- | --- |
| 52.203-3 | Gratuities |
| 52.211-5 | Material Requirements |
| 52.211-15 | Defense Priority and Allocation Requirement |
| 52.222-1 | Notice to the Government of Labor Disputes |
| 52.222-21 | Prohibition of Segregated Facilities |
| 52.222-26 | Equal Opportunity (Only Paragraphs (b)(1) through (c)(11) |
| 52.222-50 | Combating Trafficking in Persons (All orders for services) |
| 52.223-3 | Hazardous Material Identification and Material Safety Data |
| 52.225-13 | Restrictions on Certain Foreign Purchases |
| 52.227-6 | Royalty Information |
| 52.229-3 | Federal, State, and Local Taxes |
| 52.233-3 | Protest After Award |
| 52.234-1 | Industrial Resources Developed Under Defense Production Act Title III |

(b)  The following clauses are applicable to this Order at the indicated dollar values:

| Clause # & FAR Ref. | Title of Clause |
| --- | --- |
| 52.203-5 | Covenant Against Contingent Fees (If Order exceeds $50,000) |
| 52.203-6 | Restrictions on Subcontractor Sales to the Government (if Order exceeds $100,000) |
| 52.203-7 | Anti-Kickback Procedures (if Order exceeds $100,000) |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity (if Order exceeds $100,000) |
| 52.203-10 | Price or Fee Adjustment for Illegal or Improper Activity (If Order exceeds $100,000) |
| 52.203-11 | Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions (if Order exceeds or is expected to exceed $100,000) |
| 52.203-12 | Limitation on Payments to Influence Certain Federal Transactions (if Order exceeds or is expected to exceed $100,000) |
| 52.203-13 | Contractor Code of Business Ethics and Conduct (If Order exceeds $5,000,000 and the Performance Period is 120 days or more.) |
| 52.203-14 | Display of Hotline Poster(s) (If the order exceeds $5,000,000 or a lesser amount established by the Agency) |



**SAIC®**
*From Science to Solutions*

| Clause # &<br>FAR Ref. | Title of Clause |
|---|---|
| 52.209-6 | Protecting the Governments Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (*if Order exceeds $30,000*) |
| 52.215-2 | Audit and Records-Negotiation (*if Order exceeds $100,000*) |
| 52.215-14 | Integrity of Unit Prices (*if Order is for supplies and exceeds $100,000*) |
| 52.219-8 | Utilization of Small Business Concerns (*if Order exceeds $100,000*) |
| 52.219-9 | Small Business Subcontracting Plan (*if Order exceeds or is expected to exceed $550,000*) |
| 52.222-4 | Contract Work Hours & Safety Standards Act - Overtime Compensation (*if Order exceeds $100,000*) |
| 52.222-35 | Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era and Other Eligible Veterans (*if Order exceeds $100,000*) |
| 52.222-36 | Affirmative Action for Workers with Disabilities (*if Order exceeds $10,000*) |
| 52.222-37 | Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era and Other Eligible Veterans (*if Order exceeds $100,000*) |
| 52.222-39 | Notification of Employee Rights Concerning Payment of Union Dues or Fees (*if Order exceeds $100,000*) |
| 52.227-1 | Authorization and Consent (*if Order exceeds $100,000*) |
| 52.227-1 | Authorization and Consent -Alternate I |
| 52.227-2 | Notice and Assistance Regarding Patent and Copyright Infringement (*if Order exceeds $100,000*) |
| 52.227-3 | Patent Indemnity (*if Order exceeds $100,000*) |
| 52.246-16 | Responsibility for Supplies (*if Order exceeds $100,000*) |
| 52.247-63 | Preference for U.S. Flag Air Carriers (*if Order exceeds $100,000*) |

(c) The following clauses are applicable to this Order if checked:

| | Clause # &<br>FAR Ref. | Title of Clause |
|---|---|---|
| ☒ | 52.204-2 | Security Requirements |
| ☒ | 52.204-4 | Printed or Copied Double-Sided on Recycled Paper |
| ☐ | 52.204-9 | Personal Identity Verification of Contractor Personnel |
| ☐ | 52.207-3 | Right of First Refusal of Employment |
| ☐ | 52.214-26 | Audit and Records-Sealed Bidding |
| ☐ | 52.214-27 | Price Reduction for Defective Cost or Pricing Data Modifications - Sealed Bidding |
| ☐ | 52.214-28 | Subcontractor Cost or Pricing Data – Modifications – Sealed Bidding |
| ☒ | 52.215-10 | Price Reduction for Defective Cost or Pricing Data |
| ☒ | 52.215-11 | Price Reduction for Defective Cost or Pricing Data -Modifications |
| ☒ | 52.215-12 | Subcontractor Cost or Pricing Data |
| ☒ | 52.215-13 | Subcontractor Cost or Pricing Data – Modifications |
| ☒ | 52.215-15 | Pension Adjustments and Asset Reversions |
| ☐ | 52.215-16 | Facilities Capital Cost of Money |

**SAIC**
*From Science to Solutions*

| | Clause # & FAR Ref. | Title of Clause |
|---|---|---|
| ☒ | 52.215-18 | Reversion or Adjustment of Plans for Post-Retirement Benefits (PRB) Other Than Pensions |
| ☐ | 52.215-19 | Notification of Ownership Changes |
| ☐ | 52.215-20 | Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data |
| ☒ | 52.215-21 | Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data – Modifications |
| ☒ | 52.216-7 | Allowable Cost and Payment |
| ☒ | 52.216-8 | Fixed Fee |
| ☐ | 52.216-18 | Ordering |
| ☐ | 52.216-22 | Indefinite Quantity |
| ☐ | 52.217-8 | Option to Extend Services |
| ☐ | 52.217-9 | Option to Extend the Term of the Contract (a) within the current contract year (b) not to exceed 60 months or 5 years |
| ☒ | 52.219-16 | Liquidated Damages – Subcontracting Plan |
| ☒ | 52.222-2 | Payment for Overtime Premiums -Subparagraph (a) Add "0" |
| ☒ | 52.222-3 | Convict Labor |
| ☐ | 52.222-6 | Davis-Bacon Act *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-8 | Payrolls and Basic Records *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-9 | Apprentices and Trainees *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-10 | Compliance with Copeland Act Requirements *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-11 | Subcontracts (Labor Standards) |
| ☐ | 52.222-12 | Contract Termination-Debarment *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-14 | Disputes Concerning Labor Standards *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-15 | Certification of Eligibility *(if Order is for construction exceeding $2,000)* |
| ☐ | 52.222-16 | Approval of Wage Rates *(if Order is for construction exceeding $2,000)* |
| ☒ | 52.222-19 | Child Labor- Cooperation with Authorities and Remedies |
| ☒ | 52.222-20 | Walsh-Healy Public Contracts Act *(if Order exceeds $10,000)* |
| ☐ | 52.222-27 | Affirmative Action Compliance Requirements for Construction *(if Order is for construction exceeding $10,000)* |
| ☐ | 52.222-29 | Notification of Visa Denial |
| ☒ | 52.222-41 | Service Contract Act of 1965, as Amended *(if Order exceeds $2,500)* |
| ☐ | 52.222-42 | Statement of Equivalent Rates for Federal Hires |
| ☒ | 52.222-43 | Fair Labor Standards Act and Service Contract Act - Price Adjustment *(Multiple Year and Option Contracts)* |

9-932-031 (Rev. 12/24//2007)



| | Clause # & FAR Ref. | Title of Clause |
|---|---|---|
| ☐ | 52.222-46 | Evaluation of Compensation for Professional Employees |
| ☒ | 52.223-5 | Pollution Prevention and Right-to-Know Information |
| ☒ | 52.223-6 | Drug-Free Workplace |
| ☐ | 52.223-7 | Notice of Radioactive Materials |
| ☒ | 52.223-10 | Waste Reduction Program |
| ☒ | 52.223-12 | Refrigeration Equipment and Air Conditioners |
| ☒ | 52.223-14 | Toxic Chemical Release Reporting |
| ☒ | 52.223-15 | Energy Efficiency in Energy- Consuming Products |
| ☒ | 52.223-16 | IEEE 1680 Standard for the Environmental Assesment of Personal Computer Products |
| ☐ | 52.224-1 | Privacy Act Notification |
| ☐ | 52.224-2 | Privacy Act |
| ☒ | 52.225-1 | Buy American Act – Supplies |
| ☐ | 52.225-3 | Buy American Act – Free Trade Agreements – Israeli Trade Act |
| ☐ | 52.225-5 | Trade Agreements |
| ☒ | 52.225-8 | Duty-Free Entry |
| ☒ | 52.226-1 | Utilization of Indian Organizations and Indian -Owned Economic Enterprises |
| ☒ | 52.227-9 | Refund of Royalties |
| ☒ | 52.227-10 | Filing of Patent Applications - Classified Subject Matter |
| ☒ | 52.227-11 | Patent Rights - Ownership by the Contractor |
| ☐ | 52.227-13 | Patent Rights – Ownership by the Government |
| ☒ | 52.227-14 | Rights in Data - General (Alternate I, II, III, IV, or V) |
| ☐ | 52.227-15 | Representation of Limited Rights Data and Restricted Computer Software |
| ☐ | 52.227-16 | Additional Data Requirements |
| ☐ | 52.227-17 | Rights in Data - Special Works |
| ☐ | 52.227-18 | Rights in Data - Existing Work |
| ☐ | 52.227-19 | Commercial Computer Software License |
| ☐ | 52.227-20 | Rights in Data SBIR Program |
| ☐ | 52.227-21 | Technical Data Declaration, Revision and Withholding of Payment Major Systems |
| ☐ | 52.227-22 | Major System - Minimum Rights |
| ☐ | 52.227-23 | Rights to Proposal Data (Technical) |
| ☐ | 52.228-3 | Worker's Compensation Insurance (Defense Base Act) |
| ☐ | 52.228-4 | Worker's Compensation and War-Hazard Insurance Overseas |
| ☒ | 52.228-5 | Insurance - Work on a Government Installation |
| ☒ | 52.228-7 | Insurance - Liability to Third Persons |
| ☐ | 52.229-2 | North Carolina State and Local Sales and Use Tax *(for construction orders only)* |



| | Clause # &<br>FAR Ref. | Title of Clause |
|---|---|---|
| ☐ | 52.229-6 | Taxes - Foreign Fixed-Price Contracts |
| ☐ | 52.229-7 | Taxes - Fixed-Price Contracts with Foreign Governments |
| ☐ | 52.229-8 | Taxes - Foreign Cost-Reimbursement Contracts |
| ☐ | 52.229-9 | Taxes - Cost-Reimbursement Contracts with Foreign Governments |
| ☐ | 52.229-10 | State of New Mexico Gross Receipts and Compensating Tax |
| ☐ | 52.230-2 | Cost Accounting Standards (except paragraph b) |
| ☐ | 52.230-3 | Disclosure and Consistency of Cost Accounting Practices (except paragraph b) |
| ☐ | 52.230-5 | Cost Accounting Standards -Educational Institution (except paragraph b) |
| ☐ | 52.230-6 | Administration of Cost Accounting Standards |
| ☐ | 52.232-7 | Payments Under Time-and-Materials and Labor-Hour Contracts |
| ☐ | 52.232-16 | Progress Payments (Notwithstanding paragraph 1. above, in paragraph 52.232-16(d),"Government" means the "U.S. Government" except in subdivision (d)(2)(iv). |
| ☒ | 52.232-17 | Interest |
| ☒ | 52.232-18 | Availability of Funds |
| ☐ | 52.232-19 | Availability of Funds for the Next Fiscal Year |
| ☒ | 52.232-20 | Limitation of Cost |
| ☒ | 52.232-22 | Limitation of Funds |
| ☐ | 52.232-23 | Assignment of Claims |
| ☒ | 52.232-23 | Assignment of Claims Alternate I |
| ☐ | 52.232-32 | Performance-Based Payments |
| ☐ | 52.234-2 | Notice of Earned Value Management System -- Pre Award IBR |
| ☐ | 52.234-3 | Notice of Earned Value Management System -- Post Award IBR |
| ☐ | 52.234-4 | Earned Value Management System |
| ☐ | 52.236-2 | Differing Site Conditions |
| ☐ | 52.236-13 | Accident Prevention |
| ☒ | 52.237-2 | Protection of Government Buildings, Equipment and Vegetation |
| ☒ | 52.237-3 | Continuity of Services |
| ☐ | 52.237-7 | Indemnification and Medical Liability Insurance |
| ☐ | 52.237-10 | Identification of Uncompensated Overtime |
| ☐ | 52.239-1 | Privacy or Security Safeguards |
| ☒ | 52.242-1 | Notice of Intent to Disallow Costs |
| ☒ | 52.242-3 | Penalties for Unallowable Costs |
| ☒ | 52.242-4 | Certification of Final Indirect Costs |
| ☒ | 52.242-13 | Bankruptcy |
| ☒ | 52.242-15 | Stop-Work Order |
| ☒ | 52.242-15 | Stop-Work Order Alternate 1 |
| ☐ | 52.242-17 | Government Delay of Work *(Fixed price orders for supplies)* |
| ☐ | 52.243-1 | Changes - Fixed-Price |

9-932-031 (Rev. 12/24//2007)



| | Clause # & FAR Ref. | Title of Clause |
|---|---|---|
| ☐ | 52.243-1 | Changes - Fixed- Price - Alternate I |
| ☒ | 52.243-2 | Changes - Cost-Reimbursement |
| ☒ | 52.243-2 | Changes - Cost-Reimbursement - Alternate I |
| ☒ | 52.243-2 | Changes - Cost-Reimbursement - Alternate II |
| ☐ | 52.243-2 | Changes - Cost-Reimbursement - Alternate III |
| ☒ | 52.243-2 | Changes - Cost-Reimbursement - Alternate V |
| ☐ | 52.243-3 | Changes - Changes - Time-and-Materials or Labor-Hours |
| ☐ | 52.243-4 | Changes |
| ☒ | 52.243-6 | Change Order Accounting |
| ☒ | 52.244-5 | Competition in Subcontracting |
| ☒ | 52.244-6 | Subcontracts for Commercial Items |
| ☒ | 52.245-1 | Government Property |
| ☐ | 52.245-1 | Alternate I |
| ☐ | 52.245-1 | Alternate II |
| ☒ | 52.245-2 | Government Property Installation Operation Services |
| ☒ | 52.245-9 | Use & Charges *(If FAR 52.245-1 is Incorporated)* |
| ☐ | 52.246-1 | Contractor Inspection Requirements |
| ☐ | 52.246-2 | Inspection of Supplies - Fixed Price |
| ☒ | 52.246-3 | Inspection of Supplies - Cost-Reimbursement |
| ☐ | 52.246-4 | Inspection of Services - Fixed-Price |
| ☒ | 52.246-5 | Inspection of Services - Cost-Reimbursement |
| ☐ | 52.246-6 | Inspection - Time-and- Material and Labor-Hour |
| ☒ | 52.246-8 | Inspection of Research and Development - Cost-Reimbursement |
| ☐ | 52.246-20 | Warranty of Services |
| ☒ | 52.246-23 | Limitation of Liability |
| ☒ | 52.246-24 | Limitation of Liability - High-Value Items |
| ☒ | 52.246-25 | Limitation of Liability -- Services |
| ☐ | 52.247-1 | Commercial Bill of Lading Notations |
| ☐ | 52.247-55 | F.O.B. Point for Delivery of Government-Furnished Property |
| ☐ | 52.247-64 | Preference for Privately Owned U.S. Flag Commercial Vessels |
| ☒ | 52.248-1 | Value Engineering |
| ☐ | 52.248-3 | Value Engineering -- Construction |
| ☐ | 52.249-8 | Default -(Fixed-Price Supply and Services) |
| ☒ | 52.249-14 | Excusable Delays |
| ☒ | 52.253-1 | Computer Generated Forms |

 

**SCHEDULE B - U.S. GOVERNMENT TERMS AND CONDITIONS**

*Applicable to all Department of Defense (DoD) Subcontracts*

**PART II – DoD FAR SUPPLEMENTS**

**1. REFERENCES TO DFAR SUPPLEMENT**
All references herein to "DFAR Supplement" or "DFAR SUPP" shall mean the Department of Defense Supplement to the Federal Acquisition Regulation.

**2. DFAR SUPPLEMENT CLAUSES APPLICABLE TO THIS ORDER**
The clauses in DFAR Supplement Subpart 252.2 referenced in subparagraph (a) and those clauses referenced and checked in subparagraph (b), below, in effect on the date of this Order, are incorporated herein and made a part of this Order. To the extent that an earlier version of any such clause is included in the Prime Contract or Subcontract under which this Order is issued, the date of the clause as it appears in such Prime Contract or Subcontract shall be controlling and said version shall be incorporated therein. In all such clauses, unless the context of a clause requires otherwise, the term "Contractor" shall mean Seller, the term "Contract" shall mean this Order, and the terms "Government," "Contracting Officer" and equivalent phrases shall mean Buyer and Buyer's Purchasing Representative, respectively. It is intended that the referenced clause shall apply to Seller in such manner as is necessary to reflect the position of Seller as a subcontractor to Buyer, to insure Seller's obligations to Buyer and to the United States Government, and to enable Buyer to meet its obligations under its Prime Contract or Subcontract.

(a) The following clauses are applicable to this Order:

| DFAR Reference | Title of Clause |
|---|---|
| 252.203-7001 | Prohibition on Persons Convicted of Fraud or Other Defense-Contract Related Felonies |
| 252.204-7000 | Disclosure of Information |
| 252.208-7000 | Intent to Furnish Precious Metals as Government-Furnished Material |
| 252.209-7001 | Disclosure of Ownership or Control by the Government of a Terrorist Country *(If Subcontract exceeds $100,000)* |
| 252.209-7002 | Disclosure of Ownership or Control by a Foreign Government |
| 252.211-7000 | Acquisition Streamlining *(If Subcontract exceeds $1,000,000)* |
| 252.215-7000 | Pricing Adjustments |
| 252.215-7004 | Excessive Pass Through Charges (Except: (1) FFP subcontract based on adequate price competition; or (2) FP subcontract with economic price adjustment awarded on the basis of adequate price competition. |
| 252.219-7003 | Small Business Subcontracting Plan (DOD Contracts) *(If Order exceeds $550,000)* |
| 252.226-7001 | Utilization of Indian Organizations, Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns |
| 252.227-7037 | Validation of Restrictive Markings on Technical Data |
| 252.231-7000 | Supplemental Cost Principles |
| 252.247-7023 | Transportation of Supplies by Sea |



(b) DFAR Supplement clauses applicable to this Order if checked:

| DFAR Reference | Title of Clause |
|---|---|
| ☒252.203-7002 | Display of DoD Hotline Poster |
| ☒252.204-7003 | Control of Government Personnel Work Product |
| ☐252.206-7000 | Domestic Source Restriction |
| ☒252.209-7004 | Subcontracting with Firms that are Owned or Controlled by the Government of a Terrorist Country (*If order exceeds $30,000*) |
| ☐252.215-7003 | Excessive Pass-Through Charges – Identification of Subcontract Effort |
| ☐252.217-7003 | Changes |
| ☐252.217-7026 | Identification of Sources of Supply |
| ☒252.219-7004 | Small Business Subcontracting Plan (Test Program) |
| ☐252.222-7000 | Restrictions on Employment of Personnel |
| ☐252.222-7006 | Combating Trafficking in Persons |
| ☒252.223-7001 | Hazard Warning Labels |
| ☐252.223-7002 | Safety Precautions for Ammunition and Explosives |
| ☐252.223-7003 | Change in Place of Performance - Ammunition and Explosives |
| ☒252.223-7004 | Drug-Free Work Force  (*If Order exceeds $100,000*) |
| ☒252.223-7006 | Prohibition on Storage and Disposal of Toxic and Hazardous Materials |
| ☐252.225-7000 | Buy American Act - Balance of Payments Program Certificate |
| ☒252.225-7001 | Buy American Act and Balance of Payments Program |
| ☒252.225-7002 | Qualifying Country Sources as Subcontractors |
| ☒252.225-7004 | Report of Intended Performance Outside the United States and Canada – Submission After Award (If order exceeds $550,000) |
| ☐252.225-7005 | Identification of Expenditures in the United States |
| ☐252.225-7006 | Quarterly Reporting of Actual Contract Performance Outside the U.S. (*If order exceeds $550,000*) |
| ☐252.225-7007 | Prohibition on Acquisition of United States Munitions List Items from Communist Chinese Military Companies |
| ☒252.225-7012 | Preference for Certain Domestic Commodities |
| ☒252.225-7013 | Duty-Free Entry |
| ☒252.225-7014 | Preference for Domestic Specialty Metals |
| ☐252.225-7015 | Restriction on Acquisition of Hand or Measuring Tools |
| ☐252.225-7021 | Trade Agreements |
| ☐252.225-7031 | Secondary Arab Boycott of Israel |
| ☒252.225-7036 | Buy American Act – Free Trade Agreement-Balance of Payments Program |
| ☐252.225-7036 | Alternate I |
| ☐252.225-7040 | Contractor Personnel Authorized to Accompany U.S. Armed Forces Deployed Outside the United States |
| ☐252.225-7043 | Antiterrorism/Force Protection Policy for Defense Contractors Outside the United States. |
| ☐252.225-7045 | Balance of Payments Program – Construction Material Under Trade Agreements |
| ☐252.225-7045 | Alternate I |
| ☒252.227-7013 | Rights in Technical Data  - Noncommercial Items |



| DFAR Reference | Title of Clause |
|---|---|
| ☒252.227-7014 | Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation |
| ☒252.227-7015 | Technical Data – Commercial Items |
| ☒252.227-7016 | Rights in Bid or Proposal Information |
| ☐252.227-7017 | Identification and Assertion of Use, Release, or Disclosure Restrictions |
| ☐252.227-7018 | Rights in Noncommercial Technical Data and Computer Software – Small Business Innovation Research (SBIR) Program |
| ☒252.227-7019 | Validation of Asserted Restrictions -Computer Software |
| ☐252.227-7020 | Rights in Special Works |
| ☐252.227-7021 | Rights in Data - Existing Works |
| ☐252.227-7022 | Government Rights (Unlimited) |
| ☐252.227-7023 | Drawings and Other Data to Become Property of Government |
| ☒252.227-7025 | Limitations on the Use or Disclosure of Government-Furnished Information Marked w/ Restrictive Legends |
| ☒252.227-7026 | Deferred Delivery of Technical Data or Computer Software |
| ☒252.227-7027 | Deferred Ordering of Technical Data or Computer Software |
| ☐252.227-7028 | Technical Data or Computer Software Previously Delivered to The Government |
| ☒252.227-7030 | Technical Data - Withholding of Payment |
| ☐252.227-7032 | Rights in Technical Data and Computer Software (Foreign) |
| ☐252.227-7033 | Rights in Shop Drawings |
| ☒252.227-7034 | Patents- Subcontracts |
| ☒252.227-7039 | Patents – Reporting of Subject Inventions |
| ☐252.228-7005 | Accident Reporting & Investigation Involving Aircraft, Missiles, and Space Launch Vehicles |
| ☐252.232-7006 | Alternate A |
| ☐252.235-7002 | Animal Welfare |
| ☐252.235-7003 | Frequency Authorization |
| ☒252.235-7010 | Acknowledgment of Support and Disclaimer |
| ☐252.236-7000 | Modification Proposals - Price Breakdown |
| ☐252.237-7019 | Training for Contractor Personnel Interacting with Detainees |
| ☐252.239-7000 | Protection Against Compromising Emanations |
| ☐252.239-7016 | Telecommunications Security Equipment, Devices, Techniques and Services |
| ☐252.243-7002 | Requests for Equitable Adjustment |
| ☐252.245-7001 | Reports of Government Property |
| ☐252.246-7001 | Warranty of Data |
| ☐252.246-7003 | Notification of Potential Safety Issues |
| ☐252.247-7001 | Price Adjustment |
| ☐252.247-7024 | Notification of Transportation of Supplies by Sea |
| ☒252.249-7002 | Notification of Anticipated Contract Termination or Reduction |

## AFFIDAVIT OF SERVICE

State of New York                    County of Broome                    New York State Supreme Court

Index Number: CA2014 001024
Date Filed: 4/18/2014

2014001161

Plaintiff:
**BSC ASSOCIATES LLC**

vs.

Defendant:
**LEIDOS INC**

For:
Hinman, Howard & Kattell LLP
700 Security Mutual Building
80 Exchange Street
Binghamton, NY 13902

Received by Strathmore Associates to be served on **Leidos, Inc through NY Secretary of State, 99 Washington Ave, Suite 600, Albany, NY 12231.**

I, David L. Dalheim, being duly sworn, depose and say that on the **1st day of May, 2014 at 2:12 pm, I:**

served the **NEW YORK SECRETARY OF STATE** by delivering two true copies of the **Summons and Complaint,** pursuant to NYSBCL 306, with the date and hour of service endorsed thereon by me, to: **Tiffany Alexander at 99 Washington Ave., Suite 600, Albany, NY 12231**, as the Authorized Agent for the New York State Secretary of State to accept service of process on behalf of **Leidos, Inc.** An administrative fee of forty (40) dollars was also tendered.

Said documents were conformed with index number and date of filing endorsed thereon.

**Description of Person Served:** Age: 42, Sex: F, Race/Skin Color: Black, Height: 5-6, Weight: 150, Hair: Black, Glasses: Y

The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the State of New York.

David L. Dalheim
Process Server

Subscribed and Sworn to before me on 5/5/14 by the affiant who is personally known to me.

NOTARY PUBLIC

Valarie V. Donahue - Notary Public
Qualified in Albany, NY
License No.: 01DO6129672
Expires: 07/05/2017

Strathmore Associates
P.O Box 14223
Albany, NY 12212
(518) 227-1488

Our Job Serial Number: SRA-2014001161

Copyright © 1992-2013 Database Services, Inc. - Process Server's Toolbox V7.0e